UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CAROLINE DYER,

    Plaintiff,

    v.

CITY AND COUNTY OF SAN FRANCISCO, et al.,

    Defendants.

Case No. 21-cv-05920-RS

**ORDER GRANTING LEAVE TO AMEND AND GRANTING MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff Caroline Dyer was arrested during the May 2020 mass demonstrations in San Francisco protesting the killing of George Floyd. She alleges her arrest was carried out with excessive force, in violation of 42 U.S.C. § 1983. She also asserts various claims under state law.[1]
Defendants now seek summary judgment in their favor. Dyer, in turn, moves to add as a defendant Officer Kristopher Stoffel, who was involved in her arrest but who was not originally named.

The motion for leave to amend will be granted. Because defendants' motion for summary judgment addresses the evidence with respect to Officer Stoffel, it will be deemed to be brought

---

[1] The operative complaint was filed jointly by Dyer and a co-plaintiff, Hunter Sandoval. Defendants' unopposed motion to sever the two plaintiffs' claims was granted, and Sandoval's action is proceeding under a different case number. The portions of the complaint relating solely to Sandoval will be disregarded in this action.

against the amended complaint. The motion for summary judgment will be granted.

## II. BACKGROUND

On May 30, 2020, the evening prior to Dyer's arrest, peaceful protests related to George Floyd's death turned into widespread looting, vandalism, and arson in downtown San Francisco. In response to the violence, San Francisco Mayor London Breed ordered an emergency curfew to run from 8 p.m. to 5 a.m. beginning on May 31st.

After work the following day, Dyer, her boyfriend, and another friend rode their bicycles to downtown San Francisco looking for the George Floyd protest that they had heard was taking place that evening. Dyer had made a cardboard sign reading "I can't breathe."

Dyer soon discovered Market Street was lined with police officers and appeared to be closed off to traffic. She saw a group of around 80 protesters marching down Market toward Embarcadero. Dyer began walking with them chanting, "No justice no peace!" After about 30-45 minutes the group was split up by police officers approaching the protestors head-on.

Dyer, her boyfriend, and their friend went around the block and eventually found the group of protesters again, heading up Sutter Street. Dyer was walking with her bike at her side when she noticed police lined up in front and behind her, blocking her in on Sutter Street. Dyer then found herself separated from her boyfriend and their friend. She stopped to look at all the officers and "take it all in." Dyer asserts she was in shock and experiencing "disassociation."

Dyer's boyfriend then emerged from the crowd to tell her he had been shot in the arm and that they had to leave. Dyer yelled a few times "No justice, no peace!" to the officers lined on the street. Then, with one hand on her bike and one hand in the air, she walked as quickly as possible up the street attempting to leave the scene. Dyer states she made sure not to run and not to appear as a threat.

Shortly, everyone was running and screaming. Dyer turned around and saw she was being corralled by multiple officers. Dyer wound up on a sidewalk, where a number of officers,

including defendant Sergeant Terence Saw[2] and Officer Stoffel, walked toward her in full riot gear, yelling for her to leave the area. The officers' body worn camera "BWC" videos shows the officers advancing, repeatedly shouting "Back up" to anyone in front of them. Dyer insists she was attempting to comply with the officers' orders and was walking her bike in the direction that the officers had directed.

Dyer looked back, however, and saw Stoffel, Saw, and others gaining on her. Dyer contends that when Stoffel got close enough, he intentionally pushed or kicked Dyer's bike with enough force that she fell into and over it, landing on the ground and hurting herself. Dyer asserts that she raised her "I can't breathe" sign over her head in reaction, while screaming, "Fuck you" to Stoffel. Dyer insists, however, that she did not make any physical contact with Stoffel.

Defendants contend Dyer actually struck Stoffel on the left side of his helmet with an overhand blow from her right hand. Both sides have offered BWC footage taken by several officers on the scene. The footage captured by Stoffel's camera is taken from too close a distance to determine exactly what happened when he and Dyer came in direct contact. Footage from Officer Cabuntala, however, clearly shows Dyer standing up, raising her sign, and bringing her arm down in a striking motion towards Stoffel. Dkt. 44, Cabuntala BWC clip at 00:52; Dkt. 51, BWC footage identified as CCSF_DYER000167 at 2:07. While the video does not conclusively establish that Dyer actually made contact, it plainly shows what was at least an attempt by Dyer to strike Stoffel with force.

Stoffel was armed with an "extended range impact weapon" (ERIW), with 40 mm foam projectiles. ERIWs are less-lethal devices. Defendants assert the foam projectiles, which are about the size of a golf ball, cannot break skin. Officers use ERIWs to effect compliance through pain. On this occasion, Stoffel was assigned as a grenadier, meaning he had specific instructions to carry the ERIW and to deploy it if the skirmish line came under threat or attack from the

---

[2] Dyer refers to Saw as "Shaw," but there appears to be no dispute as to the identity of the individual.

protesters.

When Dyer struck or attempted to strike him, Stoffel shot her with the ERIW from approximately two feet away. Dyer can be heard immediately screaming in pain in all of the BWC videos taken by the officers. Dyer then picked up her bicycle and walked further down the street, away from the officers.

Shortly thereafter, Officer Saw moved to arrest Dyer for the curfew violation and for assaulting Stoffel. Dyer describes Saw as tripping her, grabbing the back of her head, and tackling her. Dyer asserts the side of face hit the ground, causing her ear piercings to begin bleeding "profusely." Other officers joined in and "dog-piled" on top of her as she screamed and panicked. Dyer asserts she was in shock and beginning to black out, and that her existing PTSD condition was triggered.

Officer Cabuntala assisted Saw in the arrest. The officers kneeled next to Dyer and attempted to place her in flexible plastic cuffs—sometimes referred to a "zip ties"—as she flexed her wrists and fingers. It took approximately two minutes to secure Dyer in the cuffs. Cabuntala and Saw then began to discuss next steps for the larger group. Using both hands, Saw placed one hand in the crook of Dyer's arm and the other hand on the back of her neck or upper shoulders to help her and ordered her to "Get up."

Dyer responded, "No, don't touch me like that." Saw pulled her up by the elbow and again ordered her to "Get up." Dyer continued saying, "No, you can't touch me like that" and from her standing position, suddenly twisted away from Saw. Saw applied forward pressure with a flat palm to Dyer's upper body to bend her forward and regain control. Dyer began to kick Saw. Other officers told Plaintiff to calm down. Saw yelled, "Stop kicking me." Cabuntala said, "Stop kicking him." Dyer responded, "I'm only kicking him cause he's grabbing my fucking neck." Saw had his hand on Dyer's right shoulder at the time. At some point during this interaction, Dyer slipped her wrists out of her flex cuffs, and the officers were obliged to handcuff her using metal cuffs.

Dyer asserts that when she was handcuffed and seated on the sidewalk, she asked for an explanation of what she had done, and why she was being detained. She contends she received no

answer. Earlier, however, as Saw was attempting to handcuff Dyer, however, he had yelled, "You are under arrest." When Dyer asked, "For what?" Saw responded, "Curfew. Illegal assembly . . . You shoved a police officer in the face."

SFPD officers are obligated to call for paramedic assistance when they have a reportable use of force. Stoffel therefore requested paramedic assistance for Dyer. San Francisco Fire Department arrived and assessed Dyer. She complained of an abrasion behind her left ear, but she refused further medical attention.

Dyer was booked into the custody of the San Francisco Sheriff's Office on the following charges: California Penal Code section 69 (deterring an executive officer by threat or violence), a felony (two counts); California Government Code section 8665 (refusing to obey a lawful order), a misdemeanor; California Penal Code section 148(a)(1) (resisting), a misdemeanor; and San Francisco Administrative Code section 7.17(b) (violation of emergency order). She was released the following morning.

## III.  LEGAL STANDARD

### A.  Leave to amend

Federal Rule of Civil Procedure 15(a) provides that, except in circumstances not present here, "a party may amend its pleading only with the opposing party's written consent or the court's leave," which "[t]he court should freely give . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit has directed that this policy be applied with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation omitted). In ruling upon a motion for leave to amend, a court must consider whether the moving party acted in bad faith or unduly delayed in seeking amendment, whether the opposing party would be prejudiced, whether an amendment would be futile, and whether the movant previously amended the pleading. *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). "Absent prejudice, or a strong showing of any of the remaining [factors], there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *C.F. ex rel. Farnan v. Capistrano Unified Sch.*

*Dist.*, 654 F.3d 975, 985 (9th Cir. 2011) (citation omitted).

B. Summary judgment

Summary judgment is proper "if the pleadings and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (citations and internal quotation marks omitted). If it meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which he bears the burden of proof at trial. *Id.* at 322-23. The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties. To preclude the entry of summary judgment, the non-moving party must bring forth material facts, *i.e.*, "facts that might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 588 (1986).

IV. DISCUSSION

A. Leave to amend

Dyer has offered no real explanation why she did not seek leave to amend to add Officer

Stoffel as a defendant much earlier in this litigation (or even why she was unable to ascertain his identity prior to filing suit). Nevertheless, there is no undue prejudice to defendants in allowing the amendment at this juncture, especially in light of the outcome of this order. Recognizing the lack of prejudice, defendants submitted a "conditional non-opposition" to the motion, asking only that the existing motion for summary judgment be deemed applicable to the amended complaint, that discovery not be reopened or the case otherwise delayed, and that Dyer remove the false arrest claim from the amended complaint, given her assertion in her opposition to summary judgment that she was abandoning that claim.[3]

In light of the liberal standard to permit amendment, the lack of prejudice, and defendants' non-opposition, the motion for leave to amend will be granted. Dyer will not be required to submit a revised pleading omitting the false arrest claim, but it will be deemed voluntarily dismissed.

B.  Summary judgment

Dyer's opposition to summary judgment rests her excessive force claim (and related state law claims) on three aspects of the incident in which she was arrested. First, Dyer contends it was excessive and unreasonable for Stoffel to deploy his ERIW against her, particularly at the distance of only two feet. If Dyer's description of the circumstances under which the ERIW was used could be evaluated in a vacuum, it likely would be sufficient to create a triable issue of fact as to whether the force was excessive. In Dyer's telling, she had merely screamed profanities at the officer and raised her cardboard sign over her head in response to his pushing her bicycle over and causing her to fall.

In light of the BWC footage, however, no reasonable jury could conclude that Dyer's relatively benign characterization of her conduct is fair. While it is not entirely clear how forcefully Dyer contacted Stoffel—and it is even possible she did not make contact at all, as she

---

[3] The amended complaint omits the *Monell* claim, which Dyer's opposition to summary judgment also notes she is withdrawing. Dyer continues to pursue liability against the City and County of San Francisco for her state law claims under a *respondeat superior* theory.

contends—the BWC evidence plainly reveals it was reasonable for Stoffel to believe Dyer had, at a minimum, attempted to strike him forcefully on the head or in the face. Under the evidentiary record consisting of the officer's declarations and the BWC footage, Dyer's declaration, which does not substantially contradict the declarations and the footage except by characterizations, is not sufficient to create a triable issue of fact. No reasonable jury could conclude that Stoffel's use of the non-lethal ERIW, even at close range, was excessive.[4] *See Scott v. Harris*, 550 U.S. 372 (2007) (summary judgment warranted where the "videotape quite clearly contradicts the version of the story told by [the plaintiff]" and there "are no allegations or indications that this videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened.")[5]

Second, Dyer contends excessive force was used to take her to the ground, when she contends she was not resisting arrest. Again, Dyer's characterizations do not create a triable issue of fact in light of the BWC footage. Dkt. 44, Saw BWC clip at 2:04-3:10; Cabuntala BWC clip at 2:07-2:30. The video reveals a low-to-moderate level of force applied to a struggling suspect, who had just engaged in an aggressive act against a police officer (whether or not she actually made physical contact). The force ended quickly, as Dyer ceased struggling and began speaking to the officers at a relatively normal volume level, even if still agitated.

---

[4] As such, it is not necessary to conduct a qualified immunity analysis. To the extent there is any question, however, whether it was appropriate to deploy the ERIW in these circumstances, Dyer has not rebutted defendants' showing that qualified immunity would apply.

[5] Dyer contends the use of the ERIW at close range violated departmental policy. Indeed, the policy proscribes using the devices from less than 15 feet except in circumstances where deadly force is warranted. See Dkt. 49-4. The record is not entirely clear whether the policy is intended to apply to foam projectiles, which apparently is less likely to cause serious injury at close range that so-called "bean bag" projectiles. While the existence of a departmental policy may be relevant to an assessment of the constitutionality of an officer's conduct, violation of a policy is not automatically a constitutional violation. Here, the evidence as to the circumstances and effects of the use of the ERIW would not support a conclusion by a reasonable trier of fact that the force was unconstitutionally excessive. Nor does the existence of the policy rebut defendants' showing as to qualified immunity.

Finally, Dyer claims the overly tight zip-tie or "flex" cuffs constituted excessive force. There is evidence, of course, that Dyer extricated herself from the flex cuffs after a short period of time, and was thereafter placed in metal handcuffs. Even putting that aside, Dyer has not presented evidence from which a reasonable trier of fact could conclude she was subjected to excessive force by means of too-tight flex cuffs. Nor could she overcome the qualified immunity hurdle, given the lack of clear authority requiring officers to respond immediately to any complaint by a detainee that his or her cuffs are too tight. While it might not be necessary for a plaintiff to show serious injury resulting from handcuffs before an excessive force claim will arise, Dyer's showing here is insufficient. Nor has Dyer shown a triable issue of fact exists as to whether any other aspect of her arrest involved actionable excessive force.

## V. CONCLUSION

Plaintiff's motion for leave to amend is granted and the proposed amended complaint is deemed filed. Defendants' motion for summary judgment, deemed to apply to the amended complaint, is granted. The associated sealing motions are granted. A separate judgment will be entered.

**IT IS SO ORDERED**.

Dated: December 22, 2022

_____
RICHARD SEEBORG
Chief United States District Judge